This was an application for a Writ of Error to a judgment of the Superior Court of Law for Henrico county, whereby the petitioner was sentenced to one year’s imprisonment in the Penitentiary.
The Indictment contained five Counts. The first Count charged that the prisoner was an officer of the Farmers’ Bank of Virginia, a bank chartered by this Commonwealth, and being such officer, did feloniously embezzle, and convert to his own use, a certain security and facility, viz: a paid check for the amount of $700, of the value of $700, of the property and effects of the President, Directors and Company of the said Partners’ Bank, against the Statute, &c. The second Count charged that he was such officer, and being such, a certain paid check, then lately drawn, for the payment of $700, and of the value of $700, being a security and facility, belonging to the said President, Directors and Company, was placed under his care and management, by virtue of his office aforesaid, and having it so placed, &c. did feloniously embezzle and convert to his own use, the said paid check, against the form of the Statute, &c. The third Count charged that he was an officer of the Farmers’ Bank of Virginia, and being such, had under his care and management $700, in monies numbered, of the value, &c. and one paid check for $700, of the value, &c. and twenty bank notes for the payment of $700, of the value, &c. of the property, &c. and placed under his care and management, by virtue of his place and office aforesaid, and so having the same placed under his care and management, he embezzled, &c. the same, against the Statute. The fourth Count charged that he was an officer, &c. and exercising the office and place of first accountant in said bank, and being such officer, had under his care and management a sum of money in gold and silver coin, viz : the sum of $700, also divers bank notes, &c. and one paid check, drawn by Robert Abbatt, Jr. & Co. on the 9th October, 1820, payable to Hughes & Armistead, or bearer, *and directed to the Cashier of the bank, &c. for the payment of $700, and of the value of $700, &c. of the monies, property and effects, &c. placed under his care and management, by virtue of his place and office aforesaid, and having the same so placed, &c. he embezzled, &c. the same, against the Statute, &c.
These four Counts were framed on the Act of Assembly passed on the 24th day of February, 1820, intituled, “An Act to amend the Act, intituled, ‘An Act against embezzling of records.’ ” (a)
The fifth Count charged him with the larceny of sundry bank notes, and dollars. This Count is set forth in fu'.l in the opinion of the Court, and therefore need not be here set out. (Post. p. 304.)
The prisoner having pleaded, two several Bills of Exception were signed by the Court, which it is necessary to set forth, in base verba: “Memorandum : When the venire in this Case was called, Christopher Irvine, one of them, and the first one called, was challenged by the prisoner, for cause, and being sworn on the voir dire, said that he had formed a decided opinion that the prisoner was guilty, and had frequently expressed that opinion ; that he did not know that that opinion applied particularly to the very charges alleged in the Indictment, nor had he ever heard the evidence in Court in support of the said charges, except as hereinafter stated : but that he lived in Richmond, and had had a great deal of conversation on the subject of the various charges of the embezzlement of checks, and the larceny of money from the Farmers’ Bank of Virginia, with which the prisoner had been charged, and that he the said Irvine had formed a decided opinion that the prisoner had been guilty of embezzling various checks, and stealing sundry sums of money from the Farmers’ Bank of Virginia, without being able to distinguish between the particular sums of money, and the particular checks, which form the subject of the several Indictments now depending against him. The said Irvine moreover said, that at the last Term of this Court, when the subject of the check of Abbatt & Co. charged in this Indictment, was investigated before the jury, he was casually in Court at different times, and heard part of the evidence, but does not recollect then *to have heard any part of the evidence in relation to Abbatt & Co.’s check. That the said Irvine had often heard that said check was one of *246 those which the prisoner was charged with embezzling, and that his opinion of the prisoner’s guilt related as much to that check, as to any-other, but that the opinion was a general one, that the prisoner had got the money, out of the bank by the use of checks in the manner which had been alleged, without applying definitely to any particular check, or sum of money. It was moreover shewn to the Court, in support of the challenge, that in relation to the embezzlement and larceny charged in the Indictment, there had been an examination before an Examining Court in the City of Richmond, in the month of August, 1821: that the subject of the same embezzlement and larceny had been examined before a jury in this Court, at the last Term, though no verdict had been rendered in relation thereto, and that again the same charge of larceny and embezzlement had been examined before an Examining Court in th.e City of Richmond, in the month of December, in the year 1821, in con-nexion with other charges of embezzlement and larceny, of the same character; that he did not attend either of the Examining Courts aforesaid, and has not heard any of the evidence, except as before mentioned. The said Irvine was further asked on oath, whether, if' he were impanelled in this Cause, he would go into the trial with an opinion that the prisoner was guilty ? He said he certainly should with an opinion generally that he was guilty of the charges that he had heard imputed to him, of which the charge in relation to Abbatt & Co.’s check was one, but that, as above stated, he had not heard the evidence particularly, in relation to this check: that he.believes he would be guided by the evidence, if he were on the jury, but that he should be unwilling to trust himself. This challenge for cause was overruled by the Court, and the prisoner put upon his election, to which opinion the prisoner excepts.” [Note. Immediately thereupon the prisoner challenged the venireman peremptorily.]
The second.Bill of Exceptions was in the following words: “Memorandum : In inpan-elling a jury for the trial of this Cause, Daniel S. Mosby was called, and challenged by the prisoner for favor. Whereupon the said Mosby being sworn on the voir dire, was asked by the Court whether he had formed an opinion of the guilt or*innocence of the prisoner, upon the charges alleged against him in the Indictment ? The said Mosby answered, that he had not: that he had never heard of the check of Abbatt & Co. in the indictment mentioned, till this day. The prisoner, by his Counsel, then asked the said Mosby whether he had formed an opinion as to the guilt or innocence of the prisoner upon sundry transactions of a similar nature, which, had been alleged against the prisoner; avowing a two-fold object in this enquiry ; first, by asking this and other questions upon a cross examination, to ascertain certainly whether the said Mosby had not formed and expressed an opinion upon the charges in this Indictment; andsecondly, to enable the prisoner, by ascertaining the state of the said Mosby’s mind, to exercise advisedly his right of peremptory challenge, which had not yet been used to the extent allowed by haw. And with the same views, the prisoner, by his Counsel, asked the said Mosby this other question, whether he had never heard of other checks than that of Abbatt & Co. alleged to have been embezzled by the prisoner from the Farmers’ Bank of Virginia. To these questions the Attorney General objected, and the Court refused to permit the said Mosby to answer them, and denied to the prisoner the right of asking any questions of the said Mosby, with the view of enabling the prisoner prudently to exercise his right of peremptory challenge, and denied the prisoner the right of cross examining the said Mosby, with the view above explained, inasmuch as he had answered the question propounded by the Court, in a manner which left no doubt that the said Mosby had formed no opinion in relation to the guilt or innocence of the prisoner, as it regarded the check of Abbatt & Co. in the Indictment mentioned. To which opinion the prisoner excepted.” [Note. The said Mosby was then elected by the prisoner.]
The arraignment of the prisoner on this Indictment, occurred on the 29th March, when he pleaded to issue, and of the venire summoned for his trial, only one person was elected by the prisoner, and two of the bystanders ; whereupon a new Venire Facias was awarded by the Court, returnable to Monday, the 2d April, to summon sixty freeholders to attend for the trial. On that day, eight other jurors were elected from those returned, and from the by-standers, and a jury not yet being formed, • another Venire Facias was awarded, returnable the next day, to summon *twenty-four freeholders. On the 3d April a jury was formed. It may not be improper to observe, that the great difficulty of forming a jury in this Case, arose from the number of prosecutions against the prisoner, (there being eighteen in all,) from the frequency with which they had been before the public, there having been two Examining Courts, and this Case having been before both of them, and also under trial once before in the Superior Court, and from the prejudice thereby created against him. Of the whole number attending the Court on the three aforesaid days, it appears from the record that only nine were peremptorily challenged, and all the rest challenged for cause, those challenges being allowed by the Court.
The trial continued from the 3d to the 9th inclusive, when the jury found a verdict in the following words, to wit: “ We find that the said Alexander Bithgow, the prisoner at the bar, is.guilty of larceny in stealing the money and’bank notes aforesaid, in manner and form as in the last Count of Indictment against him is alleged, and we do ascertain the term of his imprisonment in the Public Jail and Penitentiary-house, to be one year : And further, we do find that said Alexander Eithgow is not guilty of the other charges alleged against him ih the said Indictment.”
*247 The prisoner moved the Court to arrest the judgment, because of errors apparent in the Indictment, and in the verdict of the jury-rendered thereon. This motion was overruled, and sentence was pronounced according to the verdict.
During the trial, there were numerous bills of exceptions taken to the opinion of the Court on questions of evidence, and on the construction of the Act of Assembly against Embezzlement, and other questions, none of which it is necessary to insert herein, because the opinion of the General Court was not expressed on any one of them.
The prisoner, by his Counsel, Mr. Gilmer, now presented to the Court a petition for a Writ of Error, setting forth in detail, the errors which he alleged to exist in the record. Those which he assigned as reasons why the judgment should have been arrested, were as follows :
1. That the fifth Count of the Indictment, (the only one on wh'.ch he is found guilty by the jury,) contains no sufficient charge of any felony, to sustain the verdict or judgment ; because the pieces of coin, bank notes and check, ^'alleged to have been stolen, are charged to be the property of the President, Directors and Company of the Farmers’ of Virginia, which Company is not charged to be either a Mercantile firm, or Corporation, capable of holding property, and which has in fact neither natural nor legal existence.
2. That the verdict is not responsive to the issue; because it finds him guilty of larceny, in manner and form, &c. without words referring to what larceny; without finding whether grand or petit larceny; without determining whether the said larceny, if any, were committed, happened before the Indictment found.
3. That the stealing bank notes, is no larceny known to the Common Daw, and the Statute does not make such stealing larceny, but felony generally; and therefore the verdict as to the bank notes cannot be sustained.
4. That the verdict, besides finding him guilty of larceny in stealing the bank notes, (which is no larceny,) finds him guilty of stealing money, while no larceny of money is charged in the fifth Count, but a larceny of 700 pieces of silver coin, called dollars, which, for any thing appearing to the Court, are not money.
5. The verdict having found him “not guilty” of every thing but the larceny of the “money” and “bank notes,” and no larceny of money being charged in the Indictment, and stealing bank notes not being larceny, but felony, the judgment should have been a discharge from the whole Indictment.
The Case was argued by Robertson, Attorney General, and Nicholas, for the Commonwealth, and' Gilmer for the prisoner; and the following opinion was prepared by Judges Dade and R. E. Parker, and pronounced by the former:
This Case is presented to the Court upon a petition for a Writ of Error, in which it is alleged that errors have been committed by the Superior Court in which the Indictment was tried; in over-ruling the prisoner’s challenge for cause, to one of his venire-men; in suppressing his interrogatories to another of them, propounded for the purpose of deciding upon the exercise of his right of peremptory challenge; in admitting incompetent testimony in behalf of the Commonwealth, and refusing to give certain instructions to the jury which were moved by the prisoner; upon exceptions to the sufficiency of the fifth Count of the Indictment, and to the ^validity of the verdict rendered upon that Count. In considering the alleged errors, the Court deemed it expedient to deviate from the order in which they are assigned, and to direct their attention first, to the objections to the sufficiency of the fifth Count; because, if they should be sustained, the judgment would be arrested, and consequently, a decision upon the other errors rendered unnecessary. That Count is in these words:
“And the jurors aforesaid, on their oaths aforesaid, do further present, that the said Alexander Eithgow, afterwards, to wit: on the same day and year last aforesaid, at the parish and county aforesaid, and within the jurisdiction of this Court, holden as aforesaid, with force and arms divers, to wit: fifty bank notes of the Farmers’ Bank of Virginia, for the payment of divers sums of money, amounting in the whole to a large sum of money, to wit: the sum of seven hundred dollars, and of the value of seven hundred dollars, and divers, to wit: fifty bank notes, for the payment of divers sums of money, amounting in the whole to a large sum of money, to wit: the sum of seven hundred dollars, the said last mentioned bank notes being papers of value, to wit: of the value of seven hundred dollars, and divers, to wit: seven hundred pieces of silver coin, called dollars, of the value of seven hundred dollars, and one paid check for the amount of seven hundred dollars, being a paper of value, to wit: of the value of seven hundred dollars, of the monies, property and effects of the President, Directors and Company of the Farmers’ of Virginia, then and there being found, then and there feloniously did steal, take and carry away, against the form of the Act of the General Assembly, in that case made and provided and against the peace and dignity of the Commonwealth of Virginia.”
And the objection to it is, that “it contains no sufficient charge of any felony to sustain the verdict or judgment, because the pieces of coin, bank notes and check, alleged to have been stolen, are charged to be the property of the President, Directors and Company of the Farmers’ of Virginia, which Company is not charged to be either a Mercantile firm or Corporation, capable of holding property, and which has in fact neither actual nor legal existence.” This objection resolves itself into the en-quiry, whether it was necessary to set out in this Count, that the President, Directors *248 and Company of the Farmers’ of Virginia are a Corporate body? Although it might not be a sufficient designation *of a mercantile firm or private association ; yet, if it be sufficient in the case of a Corporation, it removes the objection. It is said, in support of the objection, that a Corporation being a mere creature of the legislature, its existence will never be presumed,in legal proceedings, but must always be expressly alleged. If this proposition be true, the Court would consider it equally applicable to Civil and Criminal trials: and in relation to the former class, the first question which .would, present itself would be, is such avéfme'nt¡ necessary in a Declaration-'in a case where a Corporation is Plaintiff sfclaiming a debt or due? Surely, if it be necessary in general that this political existence should be averred, it is particularly so, when the body itself, which should be presumed most con-usant of its Legislative creation, is a suitor in Court. The Court therefore went into an investigation of the authorities, to ascertain whether this averment is necessary in a Declaration by a body Corporate; and it has been satisfied that it is not-. See the Dutch West India Company v. Henriques, 1 Strange, 612. Same Case, 2 Ld. Raymond, 1535; Hobart, 211; 1 Johns. Ca. 132; 2 Bacon’s Abr. “Corporation,” E). 2. In some of these it is declared, that upon the record ■ the Corporate existence will be inferred from the Corporate name.
The Defendant is in no danger, in these cases, of being subjected to the claim of a body having no Corporate existence, be-, cause, although the Corporate being is not averred in the pleadings, it is yet required to be proven at the trial. ' And the Court-think they see good reason why this averment should not be required in a Declaration : for, in such, they know no instance of an averment but for the purpose of shewing title to the subject claimed. But there is an obvious distinction between title to the subject' in controversy, and a title to the existence of the party claiming that subject; although it is undeniable ...that without the being, there can be no-’ claim. When the Court see the name of a party in' the record, it seems but reasonable to presume the actual existence of that party, for the purposes for which it is brought into the record. ■ It will be seen by the Case of The Bank of The United States v. Haskins, 1 John. Ca. 132, that the rule is the same, whether the Act incorporating- the Company -be regarded as a public or private Act. But, if the Act of Incorporation be a private Act, there seems to be an additional reason for dispensing *with the averment peculiarly applicable to our Courts. Our Act of Assembly, (see 1 Rev. Code, p. 510, 92,) has declared, that private Acts may be given in evidence without pleading them. And this would seem to do away the only plausible objection in this case, that nothing need be proved, on the trial bujt that which has been averred in pleading.
The Court has been compelled to go at large into the reasoning upon this subject in Civil cases, not only because the principle seems to be the same in cases either Civil or Criminal, but because they could derive but little aid from direct authority in relation to Criminal cases. Perhaps the strongest authority derived from the books on Criminal Law, is to be found in the valuable collection of precedents made by Chitty in his Treatise on Criminal Law, in which there are many precedents of Indictments for larceny and other wrongs against Corporate bodies, in none of which is the political existence.,of the body stated, otherwise than by--the. mere 'existence of the name.
It remains to apply some general rules of Law, in connection with the reasons and authorities above relied on, to the present question. It is a principle of the Common Law, independent of any of the Statutes of amendment or Jeofails, that “if the issue joined be such as necessarily required on the trial, proof of facts, defectively or imperfectly stated or omitted, and without which, it is not to be presumed that either the Judge could direct the jury to give, or the jury would have given the verdict, such defect, imperfection or omission, is cured by the verdict, by the- Common Law. ” See 1 Saunders, [228,] a. in notis, from which the above is a literal quotation. If the alleged defect in this Count be matter of form only, then it is cured by the Criminal Statute of Jeofails. If, on the other hand, this allegation of property in the President', Directors & Co. of the Farmers’ of Virginia, be matter of substance, (and so the Court consider it, because there can be no larceny where there is no ownership,) then it was directly in issue upon this Count; and after verdict the Court are bound to presume, that on the trial the capacity of this Company to hold property, i. e. their Corporate existence, was proved to the jury, or admitted by the prisoner. For, it is quite clear, that it was in his power to have exacted this proof, or. been discharged upon the Count. Or had it, on the trial, been attempted to maintain, the. issue, upon this Count, by showing ¡property in the President, Directors & Co. of *the Farmers’ Bank of Virginia, such testimony must have been rejected for the variance. And then, if the Commonwealth had not adduced proof of property in the President, Directors & Co. of the Farmers’ of Virginia, which could not have been done without showing their capacity to hold, the Court must have instructed the jury, that the Count was not supported.
The prisoner then having, either b3T negligence or design, (and the Court can see an adequate motive for design,) failed to avail himself of this defect, if defect it were, at the proper stage of the Case, cannot now complain that another occasion is denied him, when it is apparent that the Commonwealth would be taken at disadvantage.
The Court next went into consideration *249 of the errors assigned in the verdict itself; and these they were prepared to have overruled. But the conclusion to which they came upon another of the errors assigned in this petition, has rendered it wholly unnecessary to give their reasons for overruling the exceptions to the verdict, or to take any further notice of them.
The next objection to the judgment of the Court below, arises out of the first Bill of Exceptions filed in this Case. By this, it appears that Christopher Irvine, one of the venire, and the first on the panel, was, upon being called, challenged by the prisoner for cause, and his challenge being over-ruled, the prisoner, in order to exclude him, was put to his peremptory challenge. If it was an error, under the circumstances stated, to over-rule the challenge for cause, this Court is of opinion, that the subsequent exclusion of Irvine does not cure it, although the record shews that the prisoner had not exhausted his peremptory challenges, even when a jury was finally obtained. To procure the reversal of a judgment of conviction, for an error in point of Eaw, it is not required that a prisoner should shew that he was actually injured by it. It will be enough, if the Court can be satisfied that he might have been injured. But this Court do perceive at least, by connecting the first and second Bills of Exception, how this error, if it be one, might have operated to the prejudice of the accused. He might thereby have been prevented from exercising to its utmost extent, his right of peremptory challenge, as a vain and useless thing. He might have thought it better after that decision to take the first jurors that offered, rather than to exercise suspicion against himself, *by challenging as many as the law allowed, when he had reason to believe, that after all, persons in the same situation with Irvine, would compose his triers; and he might have been thereby deterred, and probably was deterred, from making similar objections to others of the venire.
If, then, upon the case presented by the record, this Court shall decide that the objection to Irvine ought to have been sustained, the judgment against the prisoner must be reversed, and a new trial awarded and if that new trial is to be had upon the fifth Count only of the Indictment, the consideration of other objections, applying as they do to the first four Counts, will become unnecessary.
The Case made by the first Bill of Exceptions, is substantially as follows:
Irvine being sworn on the voir dire, said, that he had formed, and frequently expressed a decided opinion of the prisoner’s guilt, although he did not know that this opinion applied particularly to the very charges laid in the Indictment. That he had heard a great deal of conversation on the subject of various charges of embezzlement of checks, and the larceny of money, from the Farmers’ Bank of Virginia, by the prisoner, and that he had formed a decided opinion of his guilt therein, without being able to distinguish the particular checks or sums of money, which form the subjects of the several Indictments against him; but that he had heard of the check of Abbatt & Co. being one which the prisoner was charged with embezzling, and his opinion of his guilt related as much to that check as to any other. That he had not heard the evidence in Court in support of the charges against the prisoner, except that at the last Term, when the subject of Abbatt & Co.’s check, charged in this Indictment, was investigated before the jury, he was casually in Court at different times, and heard part of the evidence, but did not recollect to have heard any .part in relation to the check of Abbatt & Co. That, if im-panelled in this Cause, he should certainly go into its trial, with an opinion generally that the prisoner was guilty of the charges he had heard imputed to him, of which the charge in relation to Abbatt & Co.’s check was one; but he believed he would be governed by the evidence, although he was unwilling to trust himself.
It does not appear by the Bill of Exceptions, that Irvine was compelled to make these disclosures, and therefore we *infer he made them voluntarily. If the right of the prisoner to interrogate a person called as a juror, whether he had formed and expressed a settled opinion of his guilt, and to compel him to answer, had been questioned, it might deserve the serious consideration of this Court, whether a departure from the English practice in this particular, ought to be sanctioned. But that question is not raised by the record, and we wish it to be distinctly understood, that we do not at present decide it.
Nor do we mean to decide, that in challenges concluding to the favor, which in England are left to the conscience and discretion of triers, upon hearing the evidence ; the Judge here, acting in their place, is compelled to set out, in the Bill of Exceptions, all the evidence upon the point, and may not content himself with certifying generally that he has, upon the evidence, found the juror favorable or otherwise. The effect of such a certificate, and of the refusal of the Judge to make any other, in a case of challenge plainly concluding to the favor, is left for future consideration. We do not think the question arises in this Case, because some of us doubt whether the cause assigned here, is not a principal cause of challenge, and others of us are of opinion, that as the Judge has spread this whole Case on the record, we must decide it as it stands, on its own circumstances.
Excluding, therefore, all these weighty considerations, we come to the very question submitted by the Bill of Exceptions, and we decide it without reference to any other.
Irvine had formed and expressed an opinion, not only of the prisoner’s guilt in general, but of his guilt in relation to the embezzlement of the check of Abbatt & Co. the subject of the pending prosecution. That opinion he so far retained, that if impanelled in the Cause, he declares he *250 should go into the trial, under its influence. It was therefore an existing opinion of the guilt of the prisoner in relation to the check, for the embezzlement of which he was then indicted. It was not a light and hastily formed impression, but a decided opinion. It does not appear that this decided opinion, which had been so frequently expressed, was formed merely from rumor: It might have been formed, at least in part, for aught that appears to the contrary, from the evidence of the witnesses upon a former trial. Irvine had heard a part of the evidence on the former *trial, when the subject of this very check was before the jury, and although he does not recollect to have heard any, in relation to this check, yet he might have heard, without recollecting it; and his opinion might have been formed partly from that evidence. He does not himself pretend that his opinions had been formed altogether from rumor. He had heard a great deal of conversation respecting the prisoner’s guilt, and had heard a part of the evidence given against him at the last Court, when the subject of the check of Abbatt & Co. (charged in the Indictment he was then called upon to try), was investigated before the jury; and he had formed a decided opinion of his guilt, and does not say how that opinion was formed. It is then fair to infer, that his opinion was formed in part from the evidence, although he might not particularly recollect to have heard any part in relation to Abbatt & Co.’s check. The facts not being recollected, by no means prove its non-existence, especially in Cases like the one we are considering, of opinions formed insensibly: the causes of which soon escape the memory, whilst the opinions themselves remain. Upon this Case, as we understand it, we are clearly of opinion, that the prisoner’s objection to Irvine, for cause, ought to have been sustained. He was nota proper juror, because he would have gone into the trial with a pre-con-ceived opinion and bias against the prisoner, formed possibly, as well from the evidence he had heard, as from public rumor; and, therefore, could not be expected to deliberate and decide with that impartiality which is always expected in a jury. The practice which has prevailed in this State, of allowing objections to jurors in Criminal Cases, has probably been much too loose, and we are not disposed to carry the doctrine beyond the point settled by the English authorities. But, after a careful examination of those authorities, we do not find that any of them conflict with the opinion now delivered. The forming and expressing a deliberate opinion, seems on the contrary to have been always allowed as a good cause of challenge, provided the fact was made-to.appear .by-evidence." This is sufficiently proved by Peter Cooke’s Case, 4 Stat. Trials, as well as other authorities, and is admitted by Hawkins, B. 2, c. 43, sec. 28, in the passage cited by the Attorney General. The qualification, that “if the juror has made such declaration from his knowledge of the cause, and not out of ill-will to" the party, it is no cause of challenge,” *does not vary the case, nor prove that by the Haw of England, the expression of an unqualified opinion of another’s guilt, without a personal knowledge of it, is not at least prima facie evidence of prejudice or ill-will. Expressing the opinion from the juror’s knowledge, may not be even prima facie evidence of partiality. Expressing the same opinion, without personal knowledge, argues, to say the least of it, a readiness to believe unfavorably of the prisoner, which may afford good reason for presuming ill-will and prejudice.
Having determined that the prisoner was entitled to a new trial, it seems to the Court that such new trial ought not to extend to the Counts on which the jury had found the prisoner not guilty. The authorities, English and American, prove, that an action against several, in form ex delicto, if some be acquitted, and verdict against others, such verdict may, upon a motion of the Defendants against whom it was rendered, be set aside as to them, and stand good as to those who were acquitted. ’ This proves that the verdict is not that strictly entire thing which has been supposed by the Counsel for the Commonwealth. And the Court cannot see the difference in principle between its being severed as to parties, and severed as to Counts. Each Count is a separate Indictment, and in legal contemplation, is an Indictment for a separate, distinct and substantive offence, and the Court cannot understand but that the evidence upon these Counts is to be wholly different and unconnected. In reason, therefore, why if a prisoner had been rightfully acquitted upon one of several offences which have been joined in the same Indictment, should he be again brought into jeopardy for these alleged offences, because having been wrongfully convicted on another of these separate charges, he seeks and obtains redress against this latter error? It is said, that from the nature of the error for which this new trial is granted, it ran through the whole proceedings, and so vitiated them, as that the prisoner was never in jeopardy. But it is to be remembered, that it was an error, the effect of which was to put upon the panel jurors whose prejudices were against the prisoner, and if, notwithstanding this panel has acquitted him, to try him over on those Counts, would be to give the Commonwealth the benefit of her own wrong in toto; because she has already had.the benefit of it in part. Had the error existed in the insufficiency of all the Counts, or*the like, so that no judgment could in any event have been pronounced against the .prisoner)then the rule “never in jeopardy,” would apply. We therefore think that the new trial must be on the fifth Count only. And as it has been agreed that these errors should be considered as if regularly assigned upon the return of the Writ of Error, the Attorney General dispensing with the *251 actual emanation of the Writ, we proceed to give judgment, that the judgment of the Superior Court of Henrico be reversed, for not having sustained the prisoner’s challenge to C. Irvine; and that the Case be remanded to the Superior Court of Henrico, for a new trial to be had therein, upon the fifth Count of the Indictment, in the transcript of the record of the proceedings in this Case set out; and that the prisoner be acquitted on the first four Counts, and go thereof without day.

 Acts of 1819, ch. 22, § 2.